**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE No. 07 CV 14194

## CIV - GRAHAM

DEREK EVANS,

Plaintiff,

vs.

LIBERTY MEDICAL SUPPLY, INC.
a Florida corporation and
POLYMEDICA CORP.,
a Massachusetts corporation
authorized to do business in Florida,

Defendants.

_____/

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

### COMPLAINT

The Plaintiff, DEREK EVANS, [hereinafter referred to as "EVANS"], by

and through undersigned counsel, hereby sues the Defendants, LIBERTY

MEDICAL SUPPLY, INC., a Florida corporation, [hereinafter referred to as

"LIBERTY MEDICAL"], and POLYMEDICA CORP., a Massachusetts corporation

authorized to do business and which conducts business in Florida [hereinafter

referred to as "POLYMEDICA"] and/or collectively "Defendants", and as grounds

therefore states as follows:

### PRELIMINARY ALLEGATIONS

1.    EVANS brings this action against the Defendants to recover back pay,

front pay, prejudgment interest, and reasonable attorney's fees and costs

for unlawful retaliation in violation of 18 U.S.C. § 1514A, the civil remedy

1

to Section 806 of the Corporate and Criminal Fraud Accountability Act to

the Sarbanes-Oxley Act of 2002, 107 P.L. 204, 116 Stat. 745 (hereinafter

"Sarbanes-Oxley), and  §448.102(1) (2), and (3); and §448.104, of the

Florida Whistleblower Statute.

2.     EVANS brings this action based on his direct, independent, and personal

knowledge and also on information and belief.

## JURISDICTION

3.     EVANS is an individual who was employed by the Defendants from

approximately June 24, 2004 through June 23, 2006, when he was

constructively discharged for lawfully objecting to, opposing, providing

information about, causing information to be provided about, and/or

assisting in an investigation regarding conduct EVANS reasonably

believed constitutes violation of 18 U.S.C. §§ 1341, 1343, 1344, or 1348,

violations of rules and regulations of the Securities Exchange

Commission, or any provision of federal law relating to fraud against

shareholders committed by Defendants.  EVANS sues these Defendants

under Sarbanes-Oxley and additionally sues the Defendants under

Florida's Whistleblower's Statute.  EVANS seeks to recover back pay,

front pay, compensatory damages, special damages, and his reasonable

attorney's fees and costs as a result of Defendants' unlawful misconduct.

4.     The Defendants are "employers" within the meaning of Florida's

Whistleblower Act, § 448.101, et seq., Fla. Stat.

2

5.    Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 and 18
      U.S.C.   § 1514A. This court has supplemental jurisdiction of EVANS'
      state law claims pursuant to 28 U.S.C. § 1367.

6.    The actions giving rise to this litigation occurred in St. Lucie County,
      Florida, and at all times material and relevant, Defendants transact and
      transacted business in this District. Thus, venue is proper in the Southern
      District of Florida.

7.    EVANS is an individual subject to the protections of the Sarbanes-Oxley
      Act, 18 U.S.C. § 1514A and the Florida Whistleblower Act, Fla. Stat.
      §448.102, et. seq.

8.    EVANS engaged in activity under the Sarbanes-Oxley Act, 18 U.S.C. §
      1514A, and the Florida Whistleblower's Act, § 448.101, Fla. Stat. He is a
      citizen of the United States, and resides in St. Lucie County, Florida.

9.    Defendant POLYMEDICA, is a Massachusetts corporation authorized to
      do business and that conducts business in the Southern District of Florida,
      is a publicly-traded corporation with a class of securities registered under
      section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 781), and
      is required to file reports under section 15(a) of the Securities Exchange
      Act of 1934 (15 U.S.C. § 78o(d). POLYMEDICA, the parent company of
      the Defendant, LIBERTY MEDICAL, is subject to the provisions of the
      Sarbanes-Oxley Act and is also an "employer" within the meaning of
      Florida's Whistleblower Act, § 448.101, et seq.

10.   Defendant LIBERTY MEDICAL is a Florida corporation which conducts
      business in and for St. Lucie County, Florida and is a wholly-owned

3

subsidiary of the Defendant, POLYMEDICA, a publicly traded corporation with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 781), and which is required to file reports under section 15(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d). LIBERTY MEDICAL is subject to the provisions of the Sarbanes-Oxley Act and is also an "employer" within the meaning of Florida's Whistleblower Act, § 448.101, et seq.

## CONDITIONS PRECEDENT

11. Pursuant to 29 C.F.R. § 1980.114(a), on or about September 20, 2006, EVANS filed a timely administrative complaint with the United States Department of Labor, Secretary of Labor, with a copy to the Occupational Safety and Health Administration Area Director.  More than 180 days have passed since the filing of that complaint without the issuance of a final decision by the Secretary of Labor.  EVANS has given advance notice of his intent to file this proceeding as required by 29 C.F.R. § 1980.114(b).

12. EVANS is entitled to a de novo review of his Sarbanes-Oxley claims pursuant to 18 U.S.C. § 1514A(b)(1)(B).

13. EVANS has exhausted all administrative remedies prior to the filing of this Complaint and has fulfilled all conditions precedent.

## COMMON ALLEGATIONS

14. Defendant POLYMEDICA is a national medical products and services company and the nation's largest provider of blood glucose testing supplies and related services to people with diabetes, serving over

4

875,000 active participants. It bills Medicare and other governmental agencies and private insurance companies directly for diabetes-related supplies. POLYMEDICA does business in two segments, Diabetes and Pharmacy, and markets its diabetes products to consumers directly primarily through targeted media, direct-response television advertising and to managed care organizations.

15. For fiscal year ending March 31, 2006, POLYMEDICA, Liberty Medical's parent company, reported $491,515,000 in net revenues.

16. In November 2004, POLYMEDICA announced that it had entered into a civil settlement agreement for $35 million with the Department of Justice and the Office of the Inspector General regarding these agencies' investigations of POLYMEDICA's reimbursement documentation. This settlement agreement involved the lawsuit styled as *United States of America, ex. Rel.,* Donna Ben-Barrak v. PolyMedica Corporation and Liberty Medical Supply, Inc., Case No. 9:01-cv-08705-KLR, which involved a False Claims Act Complaint, was filed in the United States District Court, Southern District of Florida, and alleged fraudulent billing practices involving Medicare and Medicare patients.

17. The Defendants are subject to the protections of the prohibitions as contained in the Florida Whistle Blower Act, Fla. Stat.§448.102, et. seq.

18 At all times material hereto, EVANS was employed by the Defendants, reporting to executives of POLYMEDICA and LIBERTY MEDICAL regarding those aspects of his job relating to compliance activities, including those required by Sarbanes-Oxley.

5

19. EVANS first began working with Defendants' on or about June 24, 2002 in the position of Database Administrator and as a result of his superior performance, was promoted to the position of Production Control Manager.

20. As Production Control Manager, the principal function of EVANS job duties included analyzing, implementing, and maintaining new and existing in-house and third party databases, and to supervise, provide direction to, and lead, direct, and manage the activities of Database Administrators.

21. EVANS was also responsible for performing auditing tasks with respect to the Defendant's computer system and for monitoring compliance initiatives, including those required by Sarbanes-Oxley.

22. Several months after EVANS date of hire with the Defendants, POLYMEDICA and LIBERTY MEDICAL entered into a settlement agreement with the United States wherein they agreed to pay $35 million to resolve multiple allegations that they submitted claims to Medicare without proper documentation and agreed to pay the government to resolve allegations that they improperly submitted reimbursement claims for various diabetic and nebulizer products.

23. Under the terms of its settlement, POLYMEDICA and LIBERTY MEDICAL agreed to comply with a corporate integrity agreement negotiated by the Office of the Inspector General, United States Department of Health and Human Services, resulting from the United States' claims in two *qui tam* cases filed against POLYMEDICA and LIBERTY MEDICAL, one of which

6

was styled as *United States ex. Rel Donna Ben-Barrack v. Polymedica Corporation and Liberty Medical Supply, Inc.*, Civil Action No. 9:01-cv-08705-KLR, in the United States District Court, Southern District of Florida.

24.    In accordance with the aforementioned settlement agreement, various internal controls were instituted within the Defendants' computer system in accordance with the aforementioned settlement and EVANS attended meetings where these compliance initiatives as well as those pertaining to Sarbanes-Oxley were discussed.

25.    The Sarbanes-Oxley Act was enacted in the midst of numerous corporate scandals that rocked the foundation of American trust in corporate America. Its purpose is to protect investors and build confidence in U.S. securities markets. It increases criminal penalties for securities fraud and other violations and provides for the promulgation of codes of ethics and various other means for holding public companies to higher reporting standards. As stated by President George Bush, when he signed the Sarbanes-Oxley Act into law on July 30, 2002:

> This law sends very clear messages that all concerned must heed. This law says to every dishonest corporate leader: You will be exposed and punished: the era of low standards and false profits is over: no boardroom in America is above or beyond the law...the law says to workers: we will not tolerate reckless practices that artificially drive up stock prices and eventually destroy the companies, and the pensions, and your jobs. And this law says to every American: There will not be a different ethical standard for corporate America than the standard that applies to everyone else. The honesty you expect in your small businesses, or in your workplaces, in your community or in your home, will be expected and enforced in every corporate suite in this country.

7

26.     Additionally, the legislative history to Sarbanes-Oxley includes the

following commentary by Senator Leahy:

> In a variety of instances when corporate employees at both Enron and
> (Arthur) Anderson attempted to report or "blow the whistle" on fraud,
> they were discouraged at nearly every turn. For instance, a shocking
> e-mail from Enron's outside lawyers to an Enron official was
> uncovered. This e-mail responds to a request for legal advice after a
> senior Enron employee, Sherron Watkins, tried to report accounting
> irregularities at the highest levels of the company in late August 2001.
> The outside lawyer counseled Enron, in pertinent part, as follows:
> You asked that I include this communication a summary of the
> possible risks associated with discharging or constructively
> discharging employees who report allegations of improper accounting
> practices…According to media accounts, this was not an isolated
> example of whistleblowing associated with the Enron case…These
> examples further expose a culture, supported by law, that discourage
> employees from reporting fraudulent behavior not only to the proper
> authorities, such as the FBI and the SEC, but even internally. This
> 'corporate code of silence" not only hampers investigations, but also
> creates a climate where ongoing wrongdoing can occur with virtual
> impunity. The consequences of this corporate code of silence for
> investors in publicly traded companies, in particular, and for the stock
> market, in general, are serious and adverse, and they must be
> remedied. See S. Rep. 107-146 at 4-5, 10, 20, n.11.

27.     During his employment, EVANS uncovered activities which he reasonably

believed were in violation of established compliance procedures and

protocols, including those required by Sarbanes-Oxley.

28.     For instance, in approximately December 2004, while performing auditing

activities associated with his role as Production Control Manager, EVANS

discovered that the Database Development Manager, Eric Sullivan, had

logged onto the computer system as Server Administrator after his

permission had been revoked at the request of the Defendants' external

auditors.

29.     EVANS reported this to his irregularity to the Defendants, including to

8

George Narr, Chief Information Officer for POLYMEDICA. He did so orally as well as in writing.

30. EVANS complaints to Defendants related to established compliance procedures and protocols, including that an update was improperly run on all closed orders by Bob Swiatek who was a SQL developer using uploaded data. EVANS reported this to the Defendants' Head of Internal Audit, Yvonne Mazzarato of POLYMEDICA, which was what EVANS was instructed to do during compliance meetings.

31. As a result of EVANS' complaints, an Internal Audit investigation was conducted, and EVANS met with officials of POLYMEDICA to provide them with evidence of the irregularities and noncompliance which he reasonably believed had occurred and was continuing to occur.

32. Thereafter, Defendant demoted EVANS to the position of Manager of SQL Systems.

33. Ironically, Bob Swiatek, whom EVANS had caught performing prohibited acts, was promoted to EVANS' former position as Manager of Production Control.

34. EVANS was also instructed by LIBERTY MEDICAL's Vice President of Development, Rao Cherukuri, that EVANS should give Developers full access to the auditing server, although this directive did not comport with the requirements of Sarbanes-Oxley and other compliance initiatives.

35. After EVANS complained about the appropriateness of this access and the concern that Developers were using this access to change and remove data to cover up the activity previously caught, he was directed to

9

give these Developers access.

36. EVANS also reported the activity, including kills put on the traces on the productions system, to independent outside auditors at Price Waterhouse Coopers and to an outside attorney.

37. After filing these complaints, EVANS suffered a continuing loss of job responsibilities, was blacklisted, was called a "Narc," was excluded from weekly Monday management and other meetings, was told that he had failed audits when he did not, was told to perform activities which did not comply with Sarbanes-Oxley and the initiatives established to ensure compliance with the corporate integrity agreement that the Defendants had entered into with the United States, was told that he should only audit dummy accounts, and was given projects that were almost impossible to work on by the company's new Chief Information Officer, Gerhard Perskie.

38. Approximately one month prior to his constructive discharge, EVANS sent an email to POLYMEDICA's Chief Information Officer reporting activities which he reasonably believed violated the requirements set forth in Sarbanes-Oxley.

39. By June 2006, the environment became so hostile and so intolerable that EVANS was constructively discharged from his position on or about June 23, 2006.

40. During his exit interview meeting with Human Resources, EVANS indicated that he had been forced to leave his position due to ongoing harassment and discrimination, refused to sign a declaration to the effect

10

that he had no knowledge of any illegal activities, and wrote a statement
stating that illegal activities that had been previously reported to
POLYMEDICA's Internal Audit Department by EVANS were still occurring.

41. EVANS reasonably believed at the time of communicating these concerns
to Defendants, and continues to reasonably believe, that the Defendants'
actions violate federal laws relating to fraud against shareholders or
violations of rules or regulations of the Securities and Exchange
Commission. Defendants' unlawful termination of EVANS was in
retaliation of EVANS' communicating his serious concerns to Defendants'
internal auditors and to other high-ranking officials of defendants.

42. The misconduct described above was willful and wanton in that they
occurred at near the time and after that the Defendants' entered into a
$35 million agreement with the United States government and agreed to
comply with a corporate integrity agreement negotiated by the Office of
the Inspector General, United States Department of Health and Human
Services, resulting from the United States' claims in two *qui tam* cases
filed against POLYMEDICA and LIBERTY MEDICAL, one of which was
styled as *United States ex. Rel Donna Ben-Barrack v. Polymedica
Corporation and Liberty Medical Supply, Inc.,* Civil Action No. 9:01-cv-
08705-KLR, in the Unites States District Court, Southern District of
Florida.

43. Additionally, the misconduct described above was willful and wanton in
that Defendants are well aware of the requirements of federal securities
laws and the Sarbanes-Oxley Act's prohibition against retaliating against

11

persons who engaged in protected activity, but took action against EVANS despite such knowledge. The conduct of Defendants deprived EVANS of his rights under the Sarbanes-Oxley Act to report actions that he reasonably believes constitute violations of securities laws and regulations without fear from retaliation.

44.    As a direct, natural, foreseeable, and proximate result of these actions and inactions of defendants, EVANS has suffered injuries and losses including the violation of his statutory rights, loss of reputation, back pay, and special damages including attorneys fees and costs, compensatory damages, all of which injuries and losses are continuing and permanent in nature.

## COUNT I
## 18 U.S.C. § 1514A
## SARBANES OXLEY VIOLATIONS
## DEFENDANTS POLYMEDICA AND LIBERTY MEDICAL

EVANS realleges and readopts the allegations contained in paragraphs 1 through 44 above as if set forth herein.

45.    EVANS engaged in protected activity in accordance with the Sarbanes-Oxley Act.

46.    Defendants were aware of the protected activity that EVANS engaged in pursuant to the Sarbanes-Oxley Act.

47.    Defendants caused EVANS to suffer adverse employment actions including retaliation, harassment, a demotion, an ongoing loss of job responsibilities, and ultimately, a constructive discharge.

12

48.   Circumstances are sufficient to suggest that the protected activity was a
      contributing factor in the unfavorable employment actions suffered by
      EVANS.

      WHEREFORE, Plaintiff DEREK EVANS prays for the following
relief against POLYMEDICA and LIBERTY MEDICAL:

      a.  Entry of a judgment for restitutionary, compensatory, and special
          damages, including but not limited to damages for injury of reputation,
          back pay with prejudgment interest and postjudgment interest, front
          pay, and any other special damages and legal and equitable relief
          deemed appropriate by this court; and

      b.  Awarding EVANS the costs incurred in this action, including
          reasonable attorney's fees, costs, and expert fees as provided for
          under the Sarbanes-Oxley Act;

## COUNT II
## RETALIATION
## IN VIOLATION OF §448.102(1)
## DEFENDANTS POLYMEDICA AND LIBERTY MEDICAL

      EVANS realleges and readopts the allegations contained in paragraphs 1
through 44 above as if set forth herein.

49.   During his employment, Plaintiff EVANS made numerous written
      complaints to the Defendant regarding activities which he reasonably
      believed violated the Defendant's established compliance initiatives,
      including those required by SOX and by the Defendant's settlement
      agreement with the DOJ.

13

50. Defendant failed to redress EVANS concerns.

51. After filing these complaints, EVANS suffered abuse, retaliation, harassment, a demotion, an ongoing loss of job responsibilities, and ultimately, a constructive discharge.

52. Defendant retaliated against Plaintiff EVANS for his legitimate complaints, including but not limited to demoting him and constructively discharging him.

53. Defendant has no just basis for Plaintiff, EVANS', termination.

54. Plaintiff's termination constitutes adverse employment action.

55. Plaintiff's complaint and participation constitutes protected activity which invokes the protection of the Florida Whistleblower Statute.

56. Plaintiff's complaints and his termination are causally related.

57. The Defendant's conduct as described herein violates the Florida Whistleblower Statute.

58. As a result of Defendant's conduct, Plaintiff suffered damages.

59. As a direct and proximate result of Defendant's willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer damages including, wages, pain and suffering, humiliation, extreme and severe emotional distress and mental anguish; Plaintiff has suffered and will continue to suffer a loss of earnings and other employment related benefits and job opportunities. As a result, Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

60. As a further direct and proximate result of the Defendant's violation as herein described, Plaintiff has been compelled to retain the services of the

14

undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs.

61.     Plaintiff requests that attorney's fees, costs and expenses be awarded pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, DEREK EVANS, prays that judgment be entered in his favor against the Defendant, LIBERTY MEDICAL AND POLYMEDICA, as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Florida Statute §448.104, et.seq., that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT III
## RETALIATION
## IN VIOLATION OF §448.102(2)
## DEFENDANTS POLYMEDICA AND LIBERTY MEDICAL

Plaintiff realleges and readopts paragraphs 1 through 44 above

62.     During his employment, Plaintiff EVANS was involved in the investigation of the Defendants' established compliance initiatives, including those required by Sarbanes-Oxley and by the Defendants' settlement agreement with the Department of Justice.

63.     As a result of his involvement in the investigation, Plaintiff advised the Defendants of items that he reasonably believed to constitute a violation of the initiatives and the law.

64.     For instance, EVANS was told by Defendants that he should give Developers full access to the auditing server, although this directive did

15

not comport with the requirements of Sarbanes-Oxley and other compliance initiatives.

65.   After EVANS complained about the appropriateness of this access and the concern that Developers were using this access to change and remove data to cover up the activity previously caught, he was directed by Defendants to give these Developers access.

66.   Defendants did not redress the issues and violations reported by EVANS.

67.   After filing these complaints, EVANS suffered abuse, retaliation, harassment, a demotion, an ongoing loss of job responsibilities, and ultimately, a constructive discharge.

68.   Defendants retaliated against Plaintiff EVANS for his legitimate complaints, including but not limited to demoting him and constructively discharging him.

69.   Defendants have no just basis for Plaintiff, EVANS', termination.

70.   Plaintiff's termination constitutes adverse employment action.

71.   Plaintiff's complaint and participation constitutes protected activity which invokes the protection of the Florida Whistleblower Statute.

72.   Plaintiff's complaints and his termination are causally related.

73.   The Defendants' conduct as described herein violates the Florida Whistleblower Statute.

74.   As a result of Defendant's conduct Plaintiff suffered damages.

75.   As a direct and proximate result of Defendant's willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer damages including, wages, pain and suffering, humiliation, extreme and

16

severe emotional distress and mental anguish; Plaintiff has suffered and will continue to suffer a loss of earnings and other employment related benefits and job opportunities.  As a result, Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

76. As a further direct and proximate result of the Defendant's violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm.  Plaintiff will incur and continue to incur reasonable attorney's fees and costs.

77. Plaintiff requests that attorney's fees, costs and expenses be awarded pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, DEREK EVANS, prays that judgment be entered in his favor against the Defendants, LIBERTY MEDICAL SUPPLY AND POLYMEDICA, as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Florida Statute §448.104, et.seq., that Plaintiff be awarded such other relief as the Court deems just and proper.  Plaintiff further demands trial by jury.

## COUNT IV
## RETALIATION
## IN VIOLATION OF §448.102(3)
## DEFENDANTS POLYMEDICA AND LIBERTY MEDICAL

Plaintiff realleges and readopts paragraphs 1 through 44 above.

78. During his employment, Plaintiff EVANS made numerous complaints to the Defendant regarding activities which he reasonably believed violated the Defendant's established compliance initiatives, including those

17

required by SOX and by the Defendant's settlement agreement with the DOJ.

79.  EVANS was encouraged to ignore the violations.

80.  Defendants failed to ignore the violations and continued to bring the company's failure to comply with the established initiatives to the attention of management and redress EVANS concerns.

81.  After filing these complaints, EVANS suffered abuse, retaliation, harassment, a demotion, an ongoing loss of job responsibilities, and ultimately, a constructive discharge.

82.  Defendants retaliated against Plaintiff EVANS for his legitimate complaints, including but not limited to demoting him and constructively discharging him.

83.  Defendants had no just basis for Plaintiff, EVANS', termination.

84.  Plaintiff's termination constitutes adverse employment action.

85.  Plaintiff's complaint and participation constitutes protected activity which invokes the protection of the Florida Whistleblower Statute.

86.  Plaintiff's complaints and his termination are causally related.

87.  The Defendants' conduct as described herein violates the Florida Whistleblower Statute.

88.  As a result of Defendant's conduct Plaintiff suffered damages.

89.  As a direct and proximate result of Defendants' willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer damages including, wages, pain and suffering, humiliation, extreme and severe emotional distress and mental anguish; Plaintiff has suffered and

will continue to suffer a loss of earnings and other employment related benefits and job opportunities. As a result, Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

90.   As a further direct and proximate result of the Defendants' violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs.

91.   Plaintiff requests that attorney's fees, costs and expenses be awarded pursuant to Florida Statute §448.104.

WHEREFORE, Plaintiff, DEREK EVANS, prays that judgment be entered in his favor against the Defendants. LIBERTY MEDICAL and POLYMEDICA, as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Florida Statute §448.104, et.seq., that Plaintiff be awarded such other relief as the Court deems just and proper.

Plaintiff further demands trial by jury on all issues so triable.

DATED this __1__ day of June 2007.

Law Offices of Cathleen Scott, P.A.
Jupiter Gardens
250 South Central Blvd., Suite 104A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile : (561) 653-0020

Cathleen Scott, Esq.
Florida Bar No.: 135331
Kathleen M. Bonczyk, Esq.
Florida Bar No. 705551

19

1005-66

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Derek Evans

**DEFENDANTS**

Liberty Medical Supply, Inc and Polymedica Corp

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Cathleen Scott, PA
250 S. Central Blvd, Ste 104
Jupiter, FL 33458

Attorneys (If Known)

**(d)** Check County Where Action Arose:   ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN ☒   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

*07CV 14194   GRAHAM/FSC*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110  Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☒ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 2 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☒ NO      b) Related Cases ☐ YES ☒ NO

JUDGE

DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

LENGTH OF TRIAL via ___5___ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE

FOR OFFICE USE ONLY

*722904*

AMOUNT   350   RECEIPT #   _____   IFP _____